[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12011
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 24, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00061-CR-4-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE JAMES THOMPSON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(February 24, 2010)

Before BLACK, HULL and FAY, Circuit Judges.

PER CURIAM:

Willie James Thompson, Jr., appeals his 60-month sentence imposed after he

pled guilty to distributing cocaine base, in violation of 21 U.S.C. §§ 841(a),

(b)(1)(B)(iii).  After review, we affirm.

On appeal, Thompson challenges the district court's finding that he possessed a firearm in connection with the offense and therefore did not qualify for a safety-valve reduction, pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2.[1] "Safety-valve relief allows for sentencing without regard to any statutory minimum, with respect to certain offenses."  United States v. Milkintas, 470 F.3d 1339, 1344 (11th Cir. 2006).  The defendant must prove eligibility for safety-valve relief by a preponderance of the evidence.  See Milkintas, 470 F.3d at 1345; Poyato, 454 F.3d at 1296, 1299-1300.

To be eligible for safety-valve relief, the defendant, among other things, must not have possessed a firearm "in connection with the offense" of conviction. See 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2).  Generally, "possession" includes both actual and constructive possession.  See, e.g., United States v. Edwards, 166 F.3d 1362, 1363 (11th Cir. 1999) (controlled substance); United States v. Sweeting, 933 F.2d 962, 965 (11th Cir. 1991) (firearm); see also United States v. Clavijo, 165 F.3d 1341, 1342-43 (11th Cir. 1999) (acknowledging both

---

[1]When reviewing the denial of a safety-valve reduction, we review the district court's factual determinations for clear error and its legal conclusions de novo.  United States v. Poyato, 454 F.3d 1295, 1297 (11th Cir. 2006).  "[W]e will not find clear error unless our review of the record leaves us with the definite and firm conviction that a mistake has been committed." United States v. White, 335 F.3d 1314, 1319 (11th Cir. 2003) (quotation marks omitted).

actual and constructive possession, but concluding possession in the safety-valve context does not include a codefendant's firearm possession). Actual possession requires "direct physical control over the contraband." Edwards, 166 F.3d at 1363. Constructive possession, on the other hand, requires a defendant only to own or exercise dominion and control over the premises where the contraband is found. United States v. Molina, 443 F.3d 824, 829 (11th Cir. 2006).

Generally, we read the phrase "in connection with" in the Sentencing Guidelines expansively. See, e.g., United States v. Jackson, 276 F.3d 1231, 1234-35 (11th Cir. 2001) (construing possession of a firearm "in connection with" another felony offense under U.S.S.G. § 2K2.1(b)(5)[2]); United States v. Matos-Rodriguez, 188 F.3d 1300, 1308-09 (11th Cir. 1999) (construing possession of a dangerous weapon "in connection with" a counterfeiting offense under U.S.S.G. § 2B5.1(b)(3)[3]); United States v. Young, 115 F.3d 834, 837-38 (11th Cir. 1997) (construing possession of a firearm "in connection with" a crime of violence or controlled substance offense under the armed career criminal provision, U.S.S.G. § 4B1.4(b)(3)(A)). Accordingly, mere possession of a firearm is "in connection with the offense" when it is reasonable to conclude that the firearm's presence

---

[2] Now § 2K2.1(b)(6).

[3] Now § 2B5.1(b)(4).

3

emboldens the defendant to undertake the illegal conduct. Jackson, 276 F.3d at 1234-35. In addition, "possession of a firearm with intent to use it to facilitate the commission of a felony offense, or with intent to use it should it become necessary to facilitate that crime, is possession 'in connection with' that offense." Id. Thus, when the nature of the crime itself supports "an inference that the defendants would have, if necessary, used their firearms in furtherance of their crimes," the firearm possession is "in connection with" the offense. Id. at 1234.

Here, the district court did not clearly err in finding that Thompson possessed a firearm in connection with his cocaine trafficking offense. Thompson was arrested after he sold 5.7 grams of cocaine powder and 9.5 grams of cocaine base to Drug Enforcement Agency ("DEA") confidential informants in April and October 2008, respectively. In November 2008, agents arrested Thompson after he left his apartment and found 33.4 grams of cocaine on his person. Most of the drugs were in 67 small ziplock bags, placed in a larger bag. Thompson admitted he planned to sell the packaged drugs found on him.

DEA agents searched Thompson's apartment and found a 9mm handgun, a magazine and ammunition in a gun box in the closet of Thompson's bedroom. In a dresser in the same bedroom agents found packaging material that matched the packaging material found on Thompson at the time of his arrest and used in the

4

DEA's two controlled buys. At the sentencing hearing, Thompson testified that he used the packaging material to divide up his cocaine for retail sale. Thompson stated that he packaged, but did not sell, the drugs inside his apartment.

It is undisputed that the 9mm handgun found in Thompson's bedroom closet was owned by Thompson's cousin, a Leon County deputy sheriff. Thompson testified that his cousin left the firearm at the apartment a week before the arrest. Thompson explained that he moved the firearm to his bedroom closet because his girlfriend sometimes brought her niece to the apartment. Although Thompson claimed that he never used the firearm and that he did not package cocaine in the bedroom during the week the firearm was in the apartment, the district court discredited Thompson's testimony, stating that Thompson's explanation for the presence of the gun in the apartment was "not very likely."

Given these facts, the district court did not clearly err in finding that Thompson, at a minimum, constructively possessed the firearm because Thompson exercised dominion and control over the apartment in which the firearm was kept. See Molina, 443 F.3d at 829. Further, we find no clear error in the district court's finding that Thompson possessed the firearm "in connection with" his drug trafficking operation. The evidence showed that Thompson packaged the drugs in his bedroom, the same room in which he kept the firearm. Given the nature of the

5

offense, it is reasonable to infer that Thompson possessed the firearm so he could protect his illegal contraband from theft if it became necessary. See Jackson, 276 F.3d at 1234. In addition, the presence of the firearm may have emboldened Thompson to undertake the illicit activity in his bedroom. See id. Although Thompson testified that he brought the firearm into the bedroom only to keep it away from a child, the district court discredited his explanation, a finding we have no cause to disturb. See United States v. Lewis, 115 F.3d 1531, 1538 (11th Cir. 1997) ("We attribute great deference to the court's credibility determination."); 18 U.S.C. § 3742(e) (requiring court of appeals to "give due regard to the opportunity of the district court to judge the credibility of the witnesses" at sentencing). Accordingly, the district court did not err in concluding that Thompson was ineligible for a safety-valve reduction.[4]

**AFFIRMED.**

---

[4]Thompson asks us to clarify whether the application of the dangerous weapon enhancement in U.S.S.G. § 2D1.1(b)(1) precludes safety-valve relief under U.S.S.G. § 5C1.2. We need not, and do not, address this issue because the district court concluded that the standards under § 2D1.1(b)(1) and § 5C1.2 were different and analyzed Thompson's eligibility for a safety-valve reduction accordingly. Thus, this issue is not before us. Additionally, the government construes Thompson's brief to challenge the district court's application of the § 2D1.1(b)(1) dangerous weapon enhancement. However, Thompson's counseled brief consistently states that the issue on appeal is whether he qualified for a safety-valve reduction. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (explaining that a party must raise an issue "plainly and prominently" in the brief to preserve it for appellate review). Thus, we do not address the propriety of the § 2D1.1(b)(1) enhancement.